UNITED STATES DISTRICT COURT
MIDDLE DISTRICT OF PENNSYLVANIA

| | | |
|---|---|---|
| MARK FORD, | ) | CIVIL ACTION NO. 4:21-CV-1957 |
| Plaintiff | ) | |
| | ) | |
| v. | ) | |
| | ) | (ARBUCKLE, M.J.) |
| TYLER SMITH, *et al.,* | ) | |
| Defendants | ) | |

MEMORANDUM OPINION
*Defendants' Motion to Dismiss, Doc. 20*

## I.   INTRODUCTION

Mark Ford ("Plaintiff"), a state inmate at SCI Mahanoy, initiated this *pro se* § 1983 action arising out of a series of lewd comments made by a corrections officer and the PREA investigation that followed. Currently before the Court is Defendants' motion to dismiss. Although several of Plaintiff's claims should be dismissed for the reasons explained herein, Plaintiff's retaliation claims against three Defendants (Smith, Powell and Wiedernold) will be permitted to proceed.

Accordingly, Defendants' motion to dismiss will be GRANTED in part and DENIED in part as follows:

(1)   All claims against Defendants MacKnight, White, Mason, and Moslak are DISMISSED.

(2)   Plaintiff's conspiracy, failure to intervene, equal protection, and sexual harassment claims are DISMISSED.

(3)   Plaintiff's First Amendment Retaliation claims against Defendants Smith, Powell, and Wiedernold will be permitted to proceed.

## II.      BACKGROUND & PROCEDURAL HISTORY

On June 1, 2020, Plaintiff was placed in a psychiatric observation cell in SCI Mahanoy's restricted housing unit because he reported having suicidal thoughts. (Doc. 19, ¶ 13). On June 3, 2020, Plaintiff had two unpleasant interactions with a corrections officer, Defendant Tyler Smith. (Doc. 19, ¶¶ 14-16). First, Plaintiff alleges that Defendant Smith sarcastically stated, "why don't you talk to me, I can help you think better." (Doc. 19, ¶ 15). Second, after leaving and returning later in the day, Plaintiff alleges that in response to Plaintiff's request for his clothes Defendant Smith said, "if I had to walk around with a dick like that I'd wanna kill myself too." (Doc. 19, ¶ 16).

After Plaintiff was released from the psychiatric observation cell, Plaintiff filed a grievance about the two interactions with Defendant Smith. (Doc. 19, ¶ 17). The grievance was rejected, but the prison opened an investigation under the Prison Rape Elimination Act ("PREA"). During the course of that investigation, Plaintiff filed a formal PREA complaint against Defendant Smith. (Doc. 19, ¶¶ 18, 19).

Plaintiff alleges that, after he filed the formal PREA complaint, Defendant Smith went out of his way to verbally harass Plaintiff. (Doc. 19, ¶¶ 20, 22). Plaintiff alleges that he filed grievances alleging that Defendant Smith was retaliating against him for filing the PREA complaint, but nothing was done. (Doc. 19, ¶¶ 21, 23). Plaintiff also alleges that Defendant Smith issued Plaintiff a misconduct which was

later dismissed in retaliation for filing the PREA complaint (Doc. 19, ¶ 41), and denied Plaintiff his food trays "whenever he worked the unit" (Doc. 19, ¶ 35).

On August 20, 2020, Plaintiff was charged with a class B misconduct for lying to an employee for filing a PREA complaint. He was sentenced to 30 days in the RHU. (Doc. 19, ¶ 25).

Plaintiff alleges that Defendant Powell denied all of his grievances and signed off on the misconduct. (Doc. 19, ¶ 27).

Plaintiff alleges that Defendant Wiedernold was the hearing officer that presided over Plaintiff's misconduct proceedings, where Plaintiff was found guilty of lying to an employee. (Doc. 19, ¶¶ 29-32).

Plaintiff alleges that he spoke to Defendant White, who said that "we already knew you were lying, it just took us some time to issue you a misconduct." (Doc. 19, ¶ 33).

Plaintiff alleges that Defendants MacKnight, White Powell, Mason, Wiedernold and Moslak all participated in the PREA investigation and in the investigation of Plaintiff's grievances. (Doc. 19, ¶ 39).

On November 17, 2021, Plaintiff initiated this action. (Doc. 1). Defendants filed a motion to dismiss Plaintiff's original complaint. (Doc. 13). On March 18, 2022, instead of filing a brief in opposition to Defendants' motion to dismiss,

Plaintiff filed an amended complaint (Doc. 19). In that amended complaint, Plaintiff names the following Defendants:

(1)     Defendant Smith, corrections officer at SCI Mahanoy;

(2)     Defendant MacKnight, corrections classification program manager at SCI Mahanoy;

(3)     Defendant White, Deputy Superintendent at SCI Mahanoy;

(4)     Defendant Powell, corrections officer at SCI Mahanoy;

(5)     Defendant Mason, Superintendent at SCI Mahanoy;

(6)     Defendant Wiedernold, hearing examiner at SCI Mahanoy; and

(7)     Defendant Moslak, hearing examiner at SCI Mahanoy.

In his amended complaint, Plaintiff asserts the following claims:

(1)     Conspiracy (against all Defendants for conspiring to issue a false misconduct in response to the PREA complaint);

(2)     First Amendment Retaliation Claims (against Defendant Smith for retaliating against Plaintiff for filing the PREA complaint, and against Defendants Powell, Wiedernold, Moslak and MacKnight for "issuing a falsified misconduct" "without supported evidence.");

(3)     Eighth Amendment Failure to Intervene (against Defendants Powell, Wiedernold, Mason, White, Moslak, and MacKnight);

(4)     Fourteenth Amendment Equal Protection Claim (against all Defendants because they retaliated against him); and

(5)     Sexual Harassment (against Defendant Smith).

As relief, Plaintiff requests:

A.     Declare that all Defendants violated the Plaintiff's 1st, 8th and 14th Amendment rights.

B.  Award compensatory damages for the Plaintiff from the Defendants in the amount of $200,000, for the physical and emotional injuries.

C.  Award punitive damages for the Plaintiff from the Defendants in the amount of $500,000 for said violations.

D.  Award Plaintiff attorney fees, court costs and any and all other relief deemed suitable under law.

(Doc. 19, p. 7).

In response to Plaintiff's amended complaint, Defendants' filed a motion to dismiss under Rule 12(b)(6) of the Federal Rules of Civil Procedure. (Doc. 20). Along with their motion, Defendants filed a brief in support. (Doc. 21). Plaintiff filed a brief in opposition. (Doc. 24). Defendants did not file a reply. This motion (Doc. 20) has been fully briefed and is ready to decide.

## III.   LEGAL STANDARDS

### A.   MOTIONS TO DISMISS UNDER FED. R. CIV. P. 12(B)(6)

Rule 12(b)(6) of the Federal Rules of Civil Procedure authorizes a defendant to seek dismissal for "failure to state a claim upon which relief can be granted." To assess the sufficiency of a complaint when dismissal is sought under Rule 12(b)(6), a court should: (1) take note of the elements a plaintiff must plead to state a claim; (2) identify mere conclusions which are not entitled to the assumption of truth;  and

(3) determine whether the complaint's factual allegations, taken as true, could plausibly satisfy the elements of a legal claim.[1]

In order for his or her allegations to be taken as true, a plaintiff must provide some factual ground for relief, which "requires more than labels and conclusions, and a formulaic recitation of the elements of a cause of action will not do."[2] "Threadbare recitals of the elements of a cause of action, supported by mere conclusory statements, do not suffice."[3] Thus, courts "need not credit a claimant's 'bald assertions' or 'legal conclusions' when deciding a motion to dismiss."[4] The court also need not assume that a plaintiff can prove facts that he or she has not alleged.[5]

"A claim has facial plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the

---

[1] *Burtch v. Milberg Factors, Inc.*, 662 F.3d 212, 221 (3d Cir. 2011).

[2] *Bell Atlantic Corp. v. Twombly*, 550 U.S. 544, 555 (2007).

[3] *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009).

[4] *Morse v. Lower Merion Sch. Dist.*, 132 F.3d 902, 906 (3d Cir. 1997) (quoting *In re Burlington Coat Factory Sec. Litig.*, 114 F.3d 1410, 1429-30 (3d Cir. 1997)).

[5] *Associated Gen. Contractors of Cal. v. Cal. St. Council of Carpenters*, 459 U.S. 519, 526 (1983).

misconduct alleged."[6] The court must accept as true all allegations in the complaint, and any reasonable inferences that can be drawn therefrom are to be construed in the light most favorable to the plaintiff.[7] This "presumption of truth attaches only to those allegations for which there is sufficient 'factual matter' to render them 'plausible on [their] face.'"[8] The plausibility determination is context-specific and does not impose a heightened pleading requirement.[9]

### B.   SECTION 1983 CLAIMS, GENERALLY

"Section 1983 imposes civil liability upon any person who, acting under the color of state law, deprives another individual of any rights, privileges, or immunities secured by the Constitution or laws of the United States."[10] "It is well settled that § 1983 does not confer any substantive rights, but merely 'provides a

---

[6] *Palakovic v. Wetzel*, 854 F.3d 209, 219-20 (3d Cir. 2017) (quoting *Iqbal*, 556 U.S. at 678) (internal quotation marks omitted); *see also Sheridan v. NGK Metals Corp*, 609 F.3d 239, 262 n.27 (3d Cir. 2010).

[7] *Jordan v. Fox Rothschild, O'Brien & Frankel*, 20 F.3d 1250, 1261 (3d Cir. 1994).

[8] *Schuchardt v. President of the U.S.*, 839 F.3d 336, 347 (3d Cir. 2016) (internal quotation and citation omitted) (alternations in original).

[9] *Schuchardt*, 839 F.3d at 347.

[10] *Shuman v. Penn Manor Sch. Dist.,* 422 F.3d 141, 146 (3d Cir. 2005).

method for vindicating federal rights elsewhere conferred.'"[11] To establish a claim under § 1983, a plaintiff must establish a deprivation of a federally protected right and that this deprivation was committed by a person acting under color of state law.[12]

## C.    FIRST AMENDMENT RETALIATION CLAIMS

To plausibly state a retaliation claim, a prisoner must allege facts in support of the following elements: (1) constitutionally protected conduct; (2) an adverse action by prison officials that is sufficient to deter a person of ordinary firmness from exercising his constitutional rights; and (3) a causal link between the exercise of his constitutional rights and the adverse action taken against him.[13]  If a plaintiff makes this showing, the burden shifts to the defendants to show that, even if the protected speech had not taken place, they would have taken the same action.

To satisfy the second element of this claim—adverse action—a plaintiff's allegations must be sufficient to demonstrate that the defendant's actions would deter a person of ordinary firmness from engaging in the protected activity at issue.[14] "While the adverse action inquiry is ordinarily a question of fact for the jury, some

---

[11] *Williams v. Pennsylvania Human Relations Comm'n*, 870 F.3d 294, 297 (3d Cir. 2017) (quoting *Hildebrand v. Allegheny Cty.*, 757 F.3d 99, 104 (3d Cir. 2014)).

[12] *Woloszyn v. County of Lawrence*, 396 F.3d 314, 319 (3d Cir. 2005).

[13] *Mitchell v. Horn,* 318 F.3d 523, 530 (3d Cir. 2003) (internal quotation marks and brackets omitted).

[14] *Hawkins v. Brooks*, 694 F.Supp.2d 434, 442 (W.D. Pa. 2010).

alleged 'adverse actions' are so *de minimis* that they fail to state a retaliation claim as a matter of law."[15]

The third element of a First Amendment retaliation claim is established "only if the protected activity was a substantial motivating factor in the state actor's decision to take the adverse action.[16] To support this element of his or her claim, "a plaintiff must come forward with more than 'general attacks' upon the defendant's motivations . . . ."[17] As summarized in *Newmones v. Ransom*, to show that a retaliatory motive caused the adverse action, a "plaintiff may rely on direct evidence or an inference of retaliatory motive arising from":

> (1) an unusually suggestive temporal proximity between the protected activity and the alleged retaliatory action; or (2) a pattern of antagonism coupled with timing that suggests a causal link. *Lauren W. ex rel. Jean W. v. DeFlaminis*, 480 F.3d 259, 267 (3d Cir. 2007); *Rink v. Ne. Educ. Intermediate Unit 19*, 717 F. App'x 126, 134 (3d Cir. 2017) ("the temporal proximity contemplated to allow for such an inference is on the order of days or weeks"). "These are not the exclusive ways to show causation, as the proffered evidence, looked at as a whole, may suffice to raise the inference." *Farrell v. Planters Lifesavers Co.*, 206 F.3d 271, 280 (3d Cir. 2000) (quoting *Kachmar v. SunGard Data Sys., Inc.*, 109 F.3d 173, 177 (3d Cir. 1997)).[18]

---

[15] *Id.*

[16] *Doe v. Schuylkill Cty. Courthouse*, No. 3:21-CV-477, 2022 WL 1491611, at *12 (M.D. Pa. May 10, 2022).

[17] *Newmones v. Ransom*, No. 1:21-CV-276-RAL, 2022 WL 4536296, at *6 (W.D. Pa. Sept. 28, 2022) (quoting *Miskovitch v. Hostoffer*, 721 F.Supp.2d 389, 396 (W.D. Pa. 2010) and *Crawford-El v. Britton*, 523 U.S. 574, 600 (1998)).

[18] *Newmones*, 2022 WL 4536296, at *6.

At the motion to dismiss stage, a court must determine whether the alleged facts support a plausible direct or circumstantial inference of retaliatory motive connecting a plaintiff's protected activity with the adverse action.

### D.   SECTION 1983 CONSPIRACY CLAIMS

To prevail on a conspiracy claim under § 1983, a plaintiff must prove: (1) two or more persons conspired to deprive plaintiff of his constitutional rights; (2) one or more of the conspirators performed an act in furtherance of that conspiracy; (3) the over act caused an injury to plaintiff; and (4) the conspirators acted under the color of state law.[19]

The central element of a conspiracy claim under 42 U.S.C. § 1983 is the existence of a "conspiracy." To plausibly allege the existence of a conspiracy:

> a plaintiff  "must provide some factual basis to support the existence of the elements of the conspiracy: agreement and concerted action." *Jutrowski*, 904 F.3d at 295 (quoting *Capogrosso v. Supreme Court of N.J.*, 588 F.3d 180, 184-85 (3d Cir. 2009)). To adequately plead an agreement, a plaintiff must allege "the state actors named as defendants in the [ ] complaint somehow reached an understanding to deny [the plaintiff] his rights." *Id.* (quoting *Kost v. Kozakiewicz*, 1 F.3d 176, 185 (3d Cir. 1993)); *Spencer v. Steinman*, 968 F. Supp. 1011, 1020 (E.D. Pa. 1997) ("[T]o state a claim for conspiracy under § 1983, plaintiff must make 'factual allegations of combination, agreement, or understanding among all or between any of the defendants [or coconspirators] to plot, plan, or conspire to carry out the alleged chain of events.'" (quoting *Hammond v. Creative Financial Planning*

---

[19] *Wright v. Whitehall Twp.*, No. 5:20-CV-2664, 2021 WL 100091, at *11 (E.D. Pa. Jan. 12, 2021) (citing *Jutrowski v. Twp. of Riverdale*, 904 F.3d 280, 293 (3d Cir. 2019)).

*Organization*, 800 F. Supp. 1244, 1249 (E.D. Pa. 1992)). In the absence of direct evidence, allegations of circumstantial evidence in support of an agreement may suffice. *See Jutrowski,* 904 F.3d at 295.[20]

### E.   EIGHTH AMENDMENT SEXUAL HARASSMENT CLAIMS

The Eighth Amendment protects prisoners from the infliction of cruel and unusual punishment. U.S. Const. amend. VIII. The Third Circuit has held that sexual abuse of inmates by prison officials may, under some circumstances, violate the Eighth Amendment.[21] However, "it is well established that 'not . . . every malevolent touch by a prison guard gives rise to a federal cause of action.'"[22] "[T]o assess whether such conduct rises to the level of a constitutional violation, the Third Circuit has adopted a framework with both objective and subjective components—i.e., 'the incident must be objectively, sufficiently intolerable and cruel, capable of causing harm, and the official must have a culpable state of mind.'"[23]

Under this framework:

> even "a single incident, if sufficiently serious or severe, can run afoul of the Eighth Amendment as surely as can multiple, less egregious incidents." *Id.* at 477. But because "the Eighth Amendment shields inmates from only those actions 'repugnant to the conscience of mankind[,]' " *id.* at 475 (quoting *Hudson*, 503 U.S. at 10), the objective

---

[20] *Wright*, 2021 WL 100091, at *12.

[21] *Ricks v. Shover*, 891 F.3d 468, 473 (3d Cir. 2018).

[22] *McRae v. Pierson*, No. 1:20-CV-318, 2021 WL 3739303, at *4 (W.D. Pa. Aug. 24, 2021) (citing *Ricks,* 891 F.3d at 475).

[23] *McRae*, 2021 WL 3739303, at *4 (quoting *Ricks*, 891 F.3d at 475).

component is necessarily "contextual and responsive to contemporary standards of decency." *Id.* at 476  (quoting *Hudson*, 503 U.S. at 8). Accordingly, " 'conditions that cannot be said to be cruel and unusual under contemporary standards are not unconstitutional.' " *Id.* (quoting *Rhodes v. Chapman*, 452 U.S. 337, 347 (1981)). In this regard, the Third Circuit has elaborated that, while not exhaustive, examples of "objectively serious sexual contact . . . include sexualized fondling, coerced sexual activity, combinations of ongoing harassment and abuse, and exchanges of sexual activity for special treatment or to avoid discipline." *Id.* at 478.[24]

Verbal harassment, including lewd comments, sexual propositioning, and the like, is not sufficient to satisfy the objective element of an Eighth Amendment sexual harassment claim."[25]

A prison employee's failure to intervene in an ongoing physical or sexual abuse can be a basis for Eighth Amendment liability.

## IV.   ANALYSIS

### A.   THE COURT DECLINES TO CONSIDER DOCUMENTS ATTACHED TO DEFENDANTS' MOTION TO DISMISS

Defendants attached the following exhibits in support of their motion to dismiss:

(1)   August 20, 2020 misconduct report charging Plaintiff with lying to an employee (Doc. 21, p. 23).

(2)   August 24, 2020 disciplinary hearing report (including inmate's version of events) re: Misconduct No. D362281 (Doc. 21, pp. 24-26).

---

[24] *McRae*, 2021 WL 3739303, at *4.

[25] *McCain v. Wetzel*, No. 17-194, 2018 WL 1211507, at *3 (W.D. Pa. Mar. 8, 2018).

(3)  August 25, 2020 inmate appeal of Misconduct No. D362281 (Doc. 21, p. 21).

(4)  August 27, 2020 PRC response to appeal of Misconduct No. D362281 (Doc. 21, p. 28).

(5)  September 3, 2020 PREA investigation notification that Plaintiff's PREA complaint was determined to be "unfounded," (Doc. 21, p. 27).

(6)  September 16, 2020 inmate request for status of appeal of Misconduct No. D362281 (Doc. 21, p. 22).

(7)  September 22, 2020 Superintendent's response to appeal of Misconduct No. D362281 (Doc. 21, p. 20).

(8)  September 27, 2020 inmate final appeal of Misconduct No. D362281, (Doc. 21, p. 19).

(9)  October 20, 2020 final review of Misconduct No. D362281, (Doc. 21, p. 18).

Defendants argue that these documents may be considered by the court without converting their motion to a motion for summary judgment because these documents are "undisputedly authentic" and because Plaintiff's claims are based on these documents. (Doc. 21, pp. 9-10). Defendants are correct that courts have considered grievance documents attached as exhibits to a defendant's motion to dismiss, without converting a motion to dismiss to a motion for summary judgment because the inmate-plaintiff referenced the grievances in his complaint to show exhaustion.[26] "[T]he Third Circuit has yet to hold, in a published or unpublished

---

[26] *Cooper v. Martucchi,* No. 15-267, 2015 WL 4773450, at *2 (W.D. Pa. Aug. 12, 2015) (citing *Spruill v. Gillis*, 372 F.3d 218 (3d Cir. 2004)).

opinion, that a district court may consider such documents in support of a defendant's motion to dismiss in a situation other than that presented in *Spruill*, where a plaintiff referenced the grievances in his complaint to show exhaustion."[27]

Unlike in *Spruill*, Defendants do not rely on these documents to show lack of exhaustion. Instead, they argue under the burden-shifting framework that, even if Plaintiff pleaded a *prima facie* case Defendants would have taken the same action. (Doc. 21, p. 11) (arguing that Defendant Powell "would have taken the same action absent the protected conduct," and that "[t]he facts as pled establish nothing more than that Captain Powell, acted within the scope of his duties and in furtherance of legitimate security concerns, enforcing a prison policy and issuing a misconduct upon a violation of the rules.").[28] Defendants are incorrect that this Court can consider these documents in the context of the burden-shifting argument raised in their brief without converting their motion to dismiss into a motion for summary judgment.[29]

---

[27] *Cooper*, 2015 WL 4773450 at *3.

[28] *See Severin v. New York City Dep't of Educ.,* No. 1:19-CV-775-MKV-RWL, 2021 WL 1226995, at *8 (S.D.N.Y. Mar. 31, 2021); *Gibbons v. McBride*, 124 F.Supp.3d 1342, 1375 (S.D. Ga. 2015); *Eisenberg v. City of Miami Beach*, 1 F.Supp.3d 1327, 1375 (S.D. Fla. 2014).

[29] *Yuratovich v. U.S. Dep't of Justice*, No. 13-5651 (NLH), 2015 WL 8328328, at *3 (D.N.J. Dec. 8, 2015) ("Court has discretion to either convert the motion to dismiss into a motion for summary judgment, or to ignore the matters presented outside the

To the extent that Defendants seek conversion of their motion, the Court declines to do so for several reasons. First, "[a] determination as to whether a defendant would have taken the same action in the absence of protected activity is premature where the parties have not conducted discovery."[30] It is not clear in this case whether the parties have engaged in reasonable discovery. Second, converting this motion would likely have the effect of complicating and delaying this action.[31] Third, Defendants have not framed their motion as a motion for summary judgment, and have not complied with Local Rule 56.1, and thus the Court does not benefit from the sharpening of factual disputes that is envisioned by that rule.

Accordingly, the Court declines to convert the instant motion to dismiss to a motion for summary judgment and will not consider Defendants' burden-shifting argument and the evidence cited in support of it.

---

pleadings and continue to treat the filing as a motion to dismiss."); *see also* Fed. R. Civ. P. 12(d).

[30] *Eisenberg v. City of Miami Beach*, 1 F.Supp.3d at1375; *see also Kurdyla v. Pinkerton Sec.*, 197 F.R.D. 128, 131 (D.N.J. 2000).

[31] *See Renchenski v. Williams*, 622 F.3d 315 (3d Cir. 2010) (requiring that when a 12(b)(6) motion is converted to a summary judgment motion in a *pro se* prisoner case, the prisoner must receive adequate notice of the conversion, which "includes providing a prisoner-plaintiff with a paper copy of the conversion Order, as well as a copy of Rule 56 and a short summary explaining its import that highlights the utility of a Rule [56(d)] affidavit.").

### B.   PLAINTIFF HAS ALLEGED ENOUGH FACTS TO SUPPORT A PLAUSIBLE RETALIATION CLAIM AGAINST DEFENDANTS SMITH, POWELL & WIEDERNOLD

Plaintiff sets forth the following allegations to support his retaliation claims:

45.   That Defendant Smith's actions of retaliating against the Plaintiff for filing grievances and a PREA complaint against him because of the sexual harassment comments towards the Plaintiff, in the form of falsified misconducts and verbal sexual harassment.

46.   That Defendants Powell, Wiedernold, Moslak, and MacKnight actions and omissions of issuing a falsified misconduct report on Plaintiff for allegedly lying to an employee without supported evidence to support their finding constitutes a violation of Plaintiff's first amendment right.

(Doc. 19, ¶¶ 45-46).

In their motion Defendants concede that the first and second elements (protected activity and adverse action) of Plaintiff's retaliation claims against all Defendants have been satisfied. (Doc. 21, p. 9). Therefore, the Court will limit its discussion to the issue of whether the third element (causation) has been adequately pleaded.

Defendants generally argue that Plaintiff has not pleaded enough facts to establish the third element. In doing so, they rely on *Crawford-El v. Britton* and argue that Plaintiff offers no more than "general attacks" on the Defendants' motivations.

### 1.    Plaintiff's Retaliation Claim Against Defendant Smith (Doc. 19, ¶ 45) Will Proceed

In his amended complaint, Plaintiff alleges he engaged in constitutionally protected conduct (filing a PREA complaint against Defendant Smith in June 2020). He also alleges that he was subject to the following adverse action: (1) Defendant Smith filed a baseless misconduct charge that was later dismissed (date unknown, inferred as between June 2020 when the incident occurred and November 2021 when Plaintiff filed his district court complaint); (2) Defendant verbally harassed Plaintiff (date unknown, inferred as between June 2020 when the incident occurred and November 2021 when Plaintiff filed his district court complaint); and (3) denied Plaintiff his food tray while Plaintiff was confined to the RHU (sometime after August 20, 2020 but before Plaintiff filed his complaint in November 2021).

Reviewing these factual allegations, the undersigned concludes that they are enough at the motion to dismiss stage to support a plausible inference of retaliatory motive. Although the allegations in the amended complaint do not set out a clear timeline, it is clear that the allegedly retaliatory acts engaged in by Defendant Smith occurred after Plaintiff's decision to file a PREA complaint. These repeated events are enough at this stage to support a plausible causal connection. Therefore, Plaintiff's retaliation claim against Defendant Smith should be permitted to proceed.

2.     **Plaintiff's Retaliation Claim Against Defendants Powell, Wiedernold, Moslak, and MacKnight (Doc. 19 ¶ 46)**

In his amended complaint, Plaintiff alleges he engaged in constitutionally protected conduct (filing a PREA complaint against Defendant Smith). He also alleges that he was subject to adverse action (he was charged with prison "misconduct" for filing a false PREA complaint in August 2020). Defendants argue that the "causation" element has not been satisfied as to Defendants Powell, Wiedernold, Moslak, and MacKnight. I will address the allegations against each Defendant below.

a.     **Plaintiff's Retaliation Claim Against Defendants Powell & Wiedernold Will Proceed**

Plaintiff alleges that the misconduct was issued because of "the conclusion of the PREA investigations" (Doc. 19, ¶ 26), and that Defendant Powell "signed off" on the August 2020 misconduct (Doc. 19, ¶ 26).

Plaintiff alleges that he appeared before Defendant Wiedernold for his misconduct hearing (Doc. 19, ¶ 29) where he was found guilty of lying to a prison employee and sentenced to 30 days in the RHU (Doc. 19, ¶¶ 30, 34).

I find that these allegations are enough to plead a plausible retaliation claim against Defendants Powell and Wiedernold. As noted above, Defendants do not dispute that the first and second elements of Plaintiff's retaliation claim have been adequately pleaded. With respect to the causation element, I find that Plaintiff has

adequately pleaded causation. He alleges that the August 2020 misconduct was explicitly issued in response to Plaintiff's filing of his PREA complaint.[32]

In their motion, Defendants essentially argue that, relying on documents outside the complaint, they can meet their burden of showing that Defendants Powell and Wiedernold would have made the same decision absent the protected conduct for reasons reasonably related to penological interest.[33] However, it is not possible to determine this defense based on the complaint, and the Court declines to consider the documents submitted by Defendants for this purpose. This argument may be more properly addressed on summary judgment.

### b.   Plaintiff's Retaliation Claim Against Defendants Moslak & MacKnight Will be Dismissed

Plaintiff alleges that Defendant MacKnight never spoke with Plaintiff about the PREA complaint, but should have because Defendant MacKnight is the PREA coordinator. (Doc. 19, ¶ 38). He alleges that Defendants MacKnight and Moslak

---

[32] *See, e.g., Robinson v. Palco*, No. 21-2987, 2022 WL 3009746 at *3 (3d Cir. July 29, 2022) (reversing a district court's dismissal of a retaliation claim against a corrections officer who issued a misconduct and the hearing officer who convicted and sanctioned an inmate for filing a PREA complaint that was determined to be "unfounded.").

[33] Once a plaintiff pleads a plausible retaliation claim, the burden shifts to defendants to prove that they would have made the same decision absent the protected conduct for reasons reasonably related to a legitimate penological interest. *Rauser v. Horn*, 241 F.3d 330, 334 (3d Cir. 2001).

participated in investigating Plaintiff's PREA complaint, grievances, and misconduct appeals, but did not properly investigate. (Doc. 19, ¶ 39).[34]

Although Plaintiff has alleged that Defendants Moslak and MacKnight were involved in the PREA investigation that occurred before Plaintiff was charged with misconduct for lying to an employee, these allegations alone are not enough to support any plausible causal connection between the protected activity and adverse action.

### C.   PLAINTIFF HAS NOT ALLEGED ENOUGH FACTS TO SUPPORT A PLAUSIBLE CLAIM THAT ALL DEFENDANTS CONSPIRED TO DISCOURAGE PLAINTIFF FROM FILING PREA COMPLAINTS & GRIEVANCES

Plaintiff sets forth the following allegation to support his conspiracy claim:

43.   That Defendants Smith, White, Mason, Powell, MacKnight, Wiedernold, and Moslak all conspired together to retaliate against the Plaintiff by way of issuing falsified misconduct because Plaintiff filed grievances and PREA complaints against Defendant Smith for retaliation, harassment and sexual harassment.

(Doc. 19, ¶ 43).

The only factual allegation offered in support of this claim is that:

33.   Plaintiff spoke to Defendant White on August 20, 2020, about the retaliatory misconduct issued for using the PREA system and

---

[34] In their brief, Defendants argue that Defendant Moslak was involved in Plaintiff's appeal of the August 2020 misconduct. Plaintiff does not include any allegations about Defendant Moslak's involvement in his amended complaint beyond participation in the PREA investigation. The Court has considered the facts and claims as alleged in the amended complaint.

> Defendant White stated "we already knew you were lying it just took us some time to issue you a misconduct."

(Doc. 19, ¶ 33).

In his amended complaint, Plaintiff does not allege enough facts to suggest that Defendants Smith, White, Mason, Powell, MacKnight, Wiedernold, and Moslak reached an agreement to deprive him of his constitutional right to seek redress against Defendant Smith through the grievance or PREA process. In this case, Plaintiff has alleged facts that suggest that the end result of each Defendants individual acts, based on their particular role in the grievance/misconduct/PREA investigation processes, is that Plaintiff was charged and convicted of lying to a prison employee. This is not enough to show a plausible claim that, after Plaintiff filed his PREA complaint, Defendants "reached an agreement" to retaliate against Plaintiff for attempting to exercise his constitutional rights.

### D.   PLAINTIFF'S EIGHTH AMENDMENT CLAIMS WILL BE DISMISSED

Plaintiff asserts two Eighth Amendment claims. The first claim is a claim against Defendant Smith for sexual harassment.[35] The second claim is asserted

---

[35] Plaintiff alleges in his amended complaint and brief that he asserts this claim under the "PA Code" but does not identify any section of the PA Code. Furthermore, in his brief in opposition, Plaintiff cites to caselaw involving an Eighth Amendment claim of sexual harassment. Accordingly, I construe the claim under the Eighth Amendment.

against Defendants Powell, Wiedernold, Mason, White, Moslak, and MacKnight for

failing to stop the sexual harassment.

In support of his Eighth Amendment claim against Defendant Smith, Plaintiff

alleges:

> 51.   That Defendant Smith's actions and omissions of making sexual, derogatory and lewd remarks towards Plaintiff constitutes a claim of sexual harassment.

(Doc. 19, ¶ 51).

Plaintiff sets forth the following allegations to support his Eighth Amendment

claim against Defendants Powell, Wiedernold, Mason, White, Moslak, and

MacKnight:

> 48.   That Defendants Powell, Wiedernold, Mason, White, Moslak, and MacKnight actions and omissions of not intervening or properly investigating and having a prebias [sic] disposition towards the Plaintiff regarding investigating his grievances and PREA complaint was not true, because they all believed that Defendant Smith's version was more credible without any supporting evidence to confirm their beliefs, constitutes a violation of Plaintiff's 8th Amendment rights under the U.S. Constitution.

(Doc. 19, ¶ 48).

With respect to Plaintiff's Eighth Amendment sexual harassment claim

against Defendant Smith, Plaintiff's allegations are confined to allegations of lewd

comments. While the alleged comments, if true, are entirely inappropriate, they do

not amount to an Eighth Amendment violation. Therefore, Plaintiff's Eighth Amendment sexual harassment claim against Defendant Smith must be dismissed.

Similarly, in the absence of a constitutional violation, Plaintiff's claim against Powell, Wiedernold, Mason, White, Moslak, and MacKnight for failing to intervene when Defendant Smith made the comments alleged must also be dismissed.

### E. PLAINTIFF'S FOURTEENTH AMENDMENT EQUAL PROTECTION CLAIMS WILL BE DISMISSED

In support of his Fourteenth Amendment equal protection claim, Plaintiff alleges:

> 50.    That all Defendants violated Plaintiff's 14th Amendment under the Equal Protection Clause when they all retaliated against the Plaintiff for exercising his 1st Amendment right by way of filing grievances and PREA complaint against officials.

(Doc. 19, ¶ 50).

The Equal Protection Clause directs that all similarly situated individuals be treated alike.[36] In his amended complaint, Plaintiff does not offer any allegation that he was treated differently than any similarly situated individual (e.g., another inmate who filed a PREA complaint that the BII determined was "unfounded"). Instead, his equal protection claim merely restates his retaliation claim. Accordingly, Plaintiff's

---

[36] *City of Cleburne v. Cleburne Living Ctr.,* 473 U.S. 432, 439 (1985).

equal protection claim will be dismissed because he has not alleged any facts to support that he was treated differently from a similarly situated individual.

## V.     CONCLUSION

Accordingly, Defendants' Motion to Dismiss (Doc. 20) will be GRANTED in part and DENIED in part as follows:

(1)     All claims against Defendants MacKnight, White, Mason, and Moslak are DISMISSED.

(2)     Plaintiff's conspiracy, failure to intervene, equal protection, and sexual harassment claims are DISMISSED.

(3)     Plaintiff's First Amendment Retaliation claims against Defendants Smith, Powell, and Wiedernold will be permitted to proceed.

(4)     An appropriate order will be issued.

Date: December 27, 2022                BY THE COURT

_s/William I. Arbuckle_
William I. Arbuckle
U.S. Magistrate Judge