IN THE UNITED STATES DISTRICT COURT
FOR THE MIDDLE DISTRICT OF PENNSYLVANIA

Civil Action No: 21-cv-1957

MARK FORD

Plaintiff,

v.

TYLER SMITH, et al
Defendants.

---

## BRIEF IN SUPPORT OF DEFENDANTS' MOTION FOR SUMMARY JUDGMENT

Governor's Office of General Counsel,

*Kim Adams*

Kimberly Adams
Assistant Counsel
PA Department of Corrections
1920 Technology Parkway
Mechanicsburg, PA 17050
Phone No.: (717) 728-5571
Fax No.: (717) 728-0312
Email: kimbadams@pa.gov

Dated:  August 2, 2023            VIA ELECTRONIC CASE FILING

## **Table of Contents**

Table of Authorities……………………………………………………………… ii

Background ...................................................................................................1

Statement of the Questions Presented.........................................................1

   A.  Should summary judgment be granted in Defendant Wiederhold and Defendant Smith's favor because Plaintiff failed to properly exhaust his administrative remedies? ........................................................................1

   B.  Should summary judgment be granted in Defendants' favor because Defendants did not retaliate against Plaintiff in violation of his First Amendment Rights? .........................................................................................................1

Argument.....................................................................................................2

Conclusion ................................................................................................21

# <u>TABLE OF AUTHORITIES</u>

Page(s)

<u>Cases</u>

*Anderson v. Liberty Lobby, Inc.*,
477 U.S. 242 (1986) ............................................................................ 2, 3

*Ashcroft v. Iqbal*
556 U.S. 662, 677 (2009) ................................................................. 17, 20

*Carter v. McGrady*,
292 F.3d 152 (3d Cir. 2002) ................................................................ 8, 9

*Celotex Corp. v. Catrett*,
477 U.S. 317 (1986) ................................................................................ 2

*Conklin v. Warrington Tp.*,
2009 WL 1227950 ................................................................................. 18

*Crawford-El v. Britton*
523 U.S 574, 600 (1998). ....................................................................... 15

*Dyson v. Kocik*,
689 F.2d 466 (3d Cir. 1982) .................................................................... 9

*Estate of Smith v. Marasco*,
318 F.3d 497 (3d Cir. 2003) .............................................................. 7, 18

*Evancho v. Fisher*
423 F.3d 347 (3d Cir. 2005) ............................................................ 17, 20

*Farrell v. Planters Liefesavers Co.*,
206 F.3d 271 (3d Cir. 2000) ......................................................... 7, 8, 18

*Fischer v. Transue*,
2008 WL 3981521 (M.D.Pa. Aug.22, 2008) ....................................... 18

*Jones v. Bock*,
549 U.S. 199 (2007) ............................................................................ 3, 4

*Kachmar v. Sungard Data Sys., Inc.*,
109 F.3d 173 (3dCir. 1997) .................................................................. 18

*Killen v. N.W. Human Servs., Inc.*,
    2007 WL 2684541 (E.D.Pa. Sept.7, 2007) ........................................................... 18

*Mar v. City of McKeesport*,
    2007 WL 2769718 (W.D.Pa.Sept.20, 2007) ......................................................... 18

*Martinez v. Jones*,
    2015 WL 12516224 (M.D.Pa. Dec. 11, 2015) ........................................................ 8

*Nifas v. Beard*,
    274 Fed.Appx. 241 (3dCir. 2010) .......................................................................... 8

*Nyhuis v. Reno*,
    204 F.3d 65 (3dCir. 2000) ...................................................................................... 4

*Porter v. Nussle*,
    534 U.S. 516 (2002) ................................................................................................ 3

*Rauser v. Horn*,
    241 F.3d 330 (3d Cir. 2001) ............................................................................... 7, 8

*Rink v. Northeastern Educ. Intermediate Unit*,
    717 F. App'x 126 (3d Cir. 2017) ............................................................................ 7

*Robinson v. Palco*,
    2022 WL 3009746 (3dCir. 2022) ........................................................................... 9

*Romansky v. Stickman*,
    147 F. App'x. 310 (3d Cir. 2005) ........................................................................... 8

*Ross v. Blake*,
    136 S.Ct. 1850 (2016) ............................................................................................. 4

*Scott v. Harris*,
    550 U.S. 372 (2007) .............................................................................................. 16

*Singleton v. Shearer*,
    2019 WL 3337060 (M.D.Pa. July 25, 2019) ........................................... 7, 8, 17, 19

*Smith v. ABF Freight Sys., Inc.*,
    2007 WL 3231969 (M.D.Pa.Oct.29, 2007) ......................................................... 18

*Spruill v. Gillis*,
    372 F.3d 218 (3d Cir. 2004)................................................................... 3

*Vernon v. Custer*,
    2014 WL 1809386, (M.D.Pa. May 7, 2014)................................... 17, 19

*Watson v. Rozum*
    834 F.3d 417 (3d Cir. 2016)................................................... 7, 8, 9, 17

*Williams v. Folino*,
    664 F. App'x. 114 (3d Cir. 2016) ..................................................... 8, 9

*Woodford v. Ngo*,
    548 U.S. 81 (2006) ................................................................................ 3

*Zenith Radio*,
    475 U.S. 574 (1986) ............................................................................. 2

<u>Statutes</u>

42 U.S.C. § 1983 ...................................................................................... 1, 3
42 U.S.C. § 1997e(a)................................................................................... 3

<u>Rules</u>

Federal Rule of Civil Procedure 56(a) ...................................................... 2
Federal Rule of Civil Procedure 56(c) ...................................................... 2

## **Background**

Plaintiff, Mark Ford ("Plaintiff"), is an inmate incarcerated within the Pennsylvania Department of Corrections ("Department") at the State Correctional Institution ("SCI") at Mahanoy. On March 18, 2022, Plaintiff filed an Amended Complaint initiating a civil rights action pursuant to 42 U.S.C. § 1983. (Doc. 19, *passim*). Plaintiff alleges he was retaliated against by Department staff for filing a complaint pursuant to the Prison Rape Elimination Act ("PREA"). (Id.)

The Statement of Material Facts ("SMF") filed concurrently with this brief is incorporated by reference. Captain John Powell, Correction Officer Tyler Smith, and Hearing Examiner Dennis Wiederhold ("Defendants") are the only remaining Defendants. (Docs. 26 and 27, *passim*).  The remaining claims against Defendants Powell, Smith, and Wiederhold are First Amendment retaliation claims. (Id.).

## **Statement of the Questions Presented[1]**

A. Should summary judgment be granted in Defendant Wiederhold and Defendant Smith's favor because Plaintiff failed to properly exhaust his administrative remedies?

B. Should summary judgment be granted in Defendants' favor because Defendants did not retaliate against Plaintiff in violation of his First Amendment Rights?

---

[1] The suggested answer to all the questions presented is in the affirmative.

## Argument

Federal Rule of Civil Procedure 56(a) provides, in pertinent part, that summary judgment shall be granted if the "movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." The Supreme Court's summary trilogy, *Celotex Corp. v. Catrett,* 477 U.S. 317 (1986); *Anderson v. Liberty Lobby, Inc.,* 477 U.S. 242 (1986); and *Matsushita Elec. Induct. Co. v. Zenith Radio Co.,* 475 U.S. 574 (1986), sets forth the controlling standard for summary judgment motions. An issue is "genuine" only if a reasonable jury, considering the evidence presented, could find for the nonmoving party. *Anderson*, 477 U.S. at 249.

The party moving for summary judgment bears the burden of showing the absence of a genuine issue as to any material fact. *Celotex*, 477 U.S. at 323. No genuine issue for trial exists if the record taken as a whole could not lead a rational trier of fact to find for the non-moving party. The moving party, however, has no burden to negate or disprove matters on which the non-moving party will have the burden of proof at trial. The moving party need only point out to the court that there is absence of evidence to support the nonmoving party's case. *See Id.* at 325.

When the moving party carries its initial burden under Rule 56(c), the non-moving party "must do more than simply show that there is some metaphysical doubt as to the material facts." *Matsushita*, 475 U.S. at 586 (citations omitted). The non-moving party cannot rest on his allegations to get to a jury without any significant

2

probative evidence tending to support the complaint. *Anderson*, 477 U.S. at 249 (internal quotations omitted). Additionally, an opposing party cannot defeat summary judgment simply by asserting that a jury might disbelieve an opponent's affidavit. *Id.* at 256-257. To avoid summary judgment being entered in favor of Defendants, Plaintiff must produce evidence such that a reasonable jury could return a verdict for him.

## A. SUMMARY JUDGMENT SHOULD BE GRANTED IN DEFENDANT WIEDERHOLD AND DEFENDANT SMITH'S FAVOR BECAUSE PLAINTIFF FAILED TO PROPERLY EXHAUST HIS ADMINISTRATIVE REMEDIES.

The Prison Litigation Reform Act (PLRA) provides, in pertinent part, as follows: "No action shall be brought with respect to prison conditions under section 1983 of this title, or any other Federal law, by a prisoner confined in any jail, prison, or other correctional facility until such administrative remedies as are available are exhausted." *42 U.S.C. § 1997e(a)*. Application of this section is mandatory. See, *Porter v. Nussle*, 534 U.S. 516 (2002). Exhaustion, for these purposes, requires "proper" exhaustion. *See, Woodford v. Ngo*, 548 U.S. 81 (2006). In order to properly exhaust, prisoners must complete the administrative review process in accordance with the applicable procedural rules of the prison grievance process. See, *Jones v. Bock*, 549 U.S. 199 (2007). Prison grievance procedures supply the yardstick for measuring procedural default. *See*, *Spruill v. Gillis*, 372

F.3d 218 (3d Cir. 2004). Unexhausted claims may not be considered by the courts. *Jones, supra*.

In *Ross v. Blake*, the United States Supreme Court reiterated the exhaustion requirement and rejected a special circumstances exception created by the courts *See, Ross v. Blake*, 136 S.Ct. 1850 (2016). In doing so, the Court stated the PLRA foreclosed judicial discretion and the only issue is whether an administrative remedy was available. Further, when an administrative process is susceptible of multiple interpretations, an inmate should err on the side of exhaustion. *Id*.

The Department's Grievance Process, DC-ADM 804, mandates that three procedures must be completed for an inmate to exhaust his administrative remedies. First, the Grievance Officer must review the inmate's grievance. Second, the Facility Manager must review the inmate's appeal of the Grievance Officer's decision. Third, and finally, the Secretary's Office of Inmate Grievances and Appeals must review the inmate's appeal of the Facility Manager's decision. (Statement of Material Facts at ¶52).

Each of these steps must be completed for an inmate to be considered to have exhausted his administrative remedies. (Id.)*.* There is no exception for alleged futility. *Nyhuis v. Reno*, 204 F.3d 65 (3d Cir. 2000). DC-ADM 804 provides that "The inmate shall identify individuals directly involved in the event(s)" and the grievance "must include a statement of the facts relevant to the claim." (Id. at ¶ 53).

4

The statement of facts shall include the date, approximate time, and location of the event(s) that gave rise to the grievance. (Id.). The inmate shall also specifically state any claims he/she wishes to make concerning violations of Department directives, regulations, court orders, or other law. (Id.).

On June 6, 2020, Plaintiff filed grievance number 872182, which was an allegation of a sexual nature that was addressed under DC-ADM 008, Prison Rape Elimination Act. (SMF at ¶ 18). Plaintiff has alleged retaliation by Department Defendants as a result of filing this PREA complaint, which was investigated under PREA. (Doc. 19).

Plaintiff specifically alleges Defendant Wiederhold retaliated against him by finding him guilty of lying to a prison employee and sentencing him to thirty days in the Restrictive Housing Unit. (Docs. 19 and 26). A review of Plaintiff's grievance history, from June 9, 2020, through December 31, 2021[2], indicates that Plaintiff never filed a grievance, in compliance with DC-ADM 804, alleging retaliation by Defendant Wiederhold. (SMF at ¶54).

The Court, in its December 27, 2022, Memorandum, found that there were three distinct adverse acts Plaintiff has alleged against Defendant Smith in support of his claim that he was retaliated by Defendant Smith: (1) Defendant Smith filed a

---

[2] This time frame was used by the Court in its December 27, 2022, Memorandum as the time from June, when the incident occurred, and November 2021, when Plaintiff filed his Complaint. (Doc. 26 at p 17).

baseless misconduct charge that was later dismissed; (2) Defendant Smith verbally harassed Plaintiff; and, (3) denied Plaintiff his food tray while Plaintiff was confined to the RHU.  (Doc. 26 at p. 17).

A review of Plaintiff's grievances from June 9, 2020, through December 31, 2021, shows Plaintiff never filed a grievance in accordance with DC-ADM 804 against Defendant Smith regarding an issued misconduct, which was later dismissed, or withholding of a food tray. (SMF at ¶ 55). The only grievance Plaintiff filed in accordance with DC-ADM 804 regarding food was grievance number 884291, which involved staff member Ms. Stanitis and expired food. (Id. at ¶ 56).

The crux of Plaintiff's First Amendment retaliation claim is that the Defendants took specific actions against him for filing the PREA complaint. However, Plaintiff did not properly exhaust the retaliation claim against Defendant Wiederhold and Plaintiff did not properly exhaust two retaliation claims against Defendant Smith. Therefore, summary judgment should be entered for Defendant Wiederhold and summary judgment should be entered for Defendant Smith as it relates to the specific allegations of issuing a misconduct and withholding a food tray.

**B. SUMMARY JUDGMENT SHOULD BE ENTERED IN DEFENDANTS' FAVOR BECAUSE DEFENDANTS DID NOT RETALIATE AGAINST PLAINTIFF IN VIOLATION OF HIS FIRST AMENDMENT RIGHTS.**

In order to prevail on a First Amendment retaliation claim, Plaintiff must

establish the following three things: (1) the conduct in which he was engaged was constitutionally protected; (2) he suffered adverse action at the hands of prison officials; and (3) his constitutionally protected conduct was a substantial or motivating factor in the decision to take adverse action. *Rauser v. Horn*, 241 F.3d 330, 333 (3dCir. 2001).

In determining whether there was adverse action, the Court must determine whether there is a casual connection between the exercise of the constitutional right and the adverse action. *Singleton v. Shearer*, 2019 WL 3337060 at * 6 (M.D.Pa. July 25, 2019). Plaintiff must show that the protected activity was a substantial motivating factor in the adverse action, and while causation can be established by direct or circumstantial evidence, "motivation is almost never subject to proof by direct evidence." *Id.*; *Watson v. Rozum*, 834 F.3d 417, 422 (3dCir. 2016).

Motivation may be shown by:

 "evidence of either (1) an unusually suggestive temporal proximity between the protected activity and the allegedly retaliatory action, or (2) a pattern of antagonism coupled with timing that suggests a causal link." *Id.* " '[T]he timing of the alleged retaliatory action must be unusually suggestive of retaliatory motive before a causal link will be inferred.' " *Id.* at 424 (quoting *Estate of Smith v. Marasco*, 318 F.3d 497, 512 (3d Cir. 2003)). "[C]ausation, like any other fact, can be established from the evidence gleaned from the record as a whole." *Id.* (citing *Farrell v. Planters Liefesavers Co.*, 206 F.3d 271, 281 (3d Cir. 2000)). When showing causation through unusually suggestive timing, the contemplated temporal proximity must be "on the order of days or weeks." *Rink v. Northeastern Educ. Intermediate Unit*, 717 F. App'x 126, 134 (3d Cir. 2017) (citations omitted). "[W]here the temporal proximity is not so close as to be 'unduly

suggestive,' the appropriate test is 'timing plus other evidence.' " *Watson*, 834 F.3d at 424 (quoting *Farrell*, 206 F.3d at 280).

*Id.*

If the plaintiff proves these elements, then the burden shifts to the defendant to prove by a preponderance of the evidence that he "would have made the same decision absent the protected conduct for reasons reasonably related to penological interest." *Carter v. McGrady*, 292 F.3d 152, 158 (3d Cir. 2002). "Courts must bear in mind that the task of prison administrators and staff is difficult, and the decision of prison officials require deference, particularly where prison security is concerned." *Singleton v. Shearer*, 2019 WL 3337060 at * 6 (M.D.Pa. July 25, 2019); *Rauser*, 241 F.3d at 334.

The Court of Appeals for the Third Circuit has found that "[an inmates] retaliatory discipline claims fail [when] there is 'some evidence' supporting the guilty finding. "*Martinez v. Jones,* 2015 WL 12516224 at * 6 (M.D.Pa. Dec. 11, 2015), *Nifas v. Beard*, 274 Fed.Appx. 241, 244 (3dCir. 2010). To evaluate the legitimacy of a misconduct report:

> "[the Court] considers 'the quantum of evidence of the misconduct to determine whether the prison officials' decision to discipline an inmate for his violations of prison policy was within the broad discretion [the Court] must afford them.' " *Williams v. Folino*, 664 F. App'x. 114, 148-149 (3d Cir. 2016) (not precedential) (quoting *Watson*, 834 F.3d at 426). Where the prisoner is found guilty of the charges in a purportedly retaliatory misconduct report after a disciplinary hearing, the finding of guilt is considered strong evidence that the misconduct report was issued for a legitimate

8

penological reason. *See Nifas v. Beard*, 374 F. App'x. 241, 244 (3d Cir. 2010) (not precedential); *Romansky v. Stickman*, 147 F. App'x. 310, 312 (3d Cir. 2005) (not precedential). A finding of guilt on a misconduct charge, combined with "a meaningful written statement of the evidence relied on and the reasons for the action taken," establishes a "quantum of evidence" of misconduct sufficient to warrant summary judgment. *Williams*, 664 F.App'x. 144, 148-49 (*quoting Watson*, 834 F.3d at 426; *Dyson v. Kocik*, 689 F.2d 466, 467 (3d Cir. 1982)).

*Singleton* at *7.

Retaliation claim against Defendant Powell and Defendant Wiederhold:

Plaintiff alleges that Defendant Powell and Defendant Wiederhold retaliated against him for filing a good faith PREA complaint. (Doc. 19). The Department does not dispute that the filing of a PREA complaint against a corrections officer is an activity protected by the First Amendment and the misconduct, as well as the resulting sanction, was issued in response to the filing of the PREA complaint. *Watson v. Rozum*, 834 F.3d 417, 422 (3dCir. 2016); *Robinson v. Palco*, 2022 WL 3009746 at *3 (3rdCir. 2022). However, the issuance of the misconduct, specifically lying to an employee, is legitimately related to a penological interest, and there is a quantum of evidence to support the finding of guilt on the misconduct, thereby warranting summary judgment in Defendants' favor. *Carter v.* 292 F.3d at 158; *Singleton* at *7.

Plaintiff alleges this misconduct was issued in retaliation because he filed the PREA allegation in good faith. (Doc. 19). Department Policy 008 states "For the

purpose of disciplinary action, a report of sexual abuse made in good faith, based upon a reasonable belief that the alleged conduct occurred, shall not constitute falsely reporting an incident of lying, even if an investigation does not establish evidence sufficient to substantiate the allegation." (SMF at ¶ 25). However, the policy further states "Reporting inmates shall be subject to disciplinary action for sexual abuse or sexual harassment allegations which have been unfounded, and for which the investigation was satisfactorily approved by the Bureau of Investigations and Intelligence." (Id.). A finding of unfounded means an allegation of sexual abuse and/or sexual harassment was investigated and determined not to have occurred. (Id.).

Plaintiff submitted his PREA complaint through grievance number 872182, and per policy was submitted to SCI-Mahanoy's Security Office for investigation. (SMF at ¶¶ 18 and 19). The grievance was assigned case number 2020-P-770 and investigated by Lieutenant Biscoe. (Id. at ¶ 20). In accordance with Policy DC-ADM 008, Lieutenant Biscoe completed an Investigative Summary of the allegations of abuse and harassment and determined the allegations to be unsubstantiated. (Id. at ¶ 21). The investigation was reviewed by the Security Captain to ensure it met the PREA standards.  Plaintiff did not receive a misconduct at this time. (Id. at ¶ 22).

DC-ADM 008 requires an investigation conducted by the institution to be forwarded to BII. (Id. at ¶ 23). After review by BII, it was determined that the

allegations of sexual harassment and abuse were not unsubstantiated, but rather were unfounded. (Id. at ¶ 24). BII notified SCI-Mahanoy's Security Office of this finding on or about August 20, 2020. (Id.). In accordance with policy, Plaintiff was issued misconduct number D362281 of lying to staff, based on the determination that the allegations of abuse and harassment were unfounded. (Id. at ¶ 36).

In deciding whether an allegation of abuse or harassment is substantiated, unsubstantiated, or unfounded, the Department's investigative training and PREA standards require that a credibility assessment of each alleged victim, witness, and abuser be completed when formulating a conclusion. (Id. at ¶ 26). During this process, there should be an identification of whether the complaint was inherently implausible or whether a motive to falsify was established to help support the determination to issue discipline. (Id. at ¶ 27). Generally, if an inmate is alleging something occurred in a specific sequence or occurred in a specific way and those claims are conclusively refuted, there is enough evidence to indicate that a complaint was not made in good faith and warrants discipline. (Id. at ¶ 28).

The Department has a penological reason for disciplining PREA allegations that were unfounded or not made in good faith, which is to deter future false complaints. (Id. at ¶ 29). PREA investigations are taken very seriously and thoroughly investigated, which requires a lot of investigatory and responsive resources. (Id. at ¶ 30). The Department receives approximately four hundred to six

11

hundred false PREA complaints a year, which misuses the investigatory and responsive resources. (Id. at ¶ 31). The issuing of a disciplinary misconduct deters future filings of false PREA allegations, which deters inmates from trying to utilize PREA as a tool to manipulate staff or their own situation. (Id. at ¶ 32).

There was evidence to support BII's determination that the PREA allegations related to the present matter were unfounded. (Id. at ¶ 33). With regard to the allegation of sexual abuse, the video review showed that Plaintiff was standing against the door, so it was impossible for anyone, and specifically Defendant Smith who was on the other side of the door, to be able to see Plaintiff's genitals. (Id. at ¶ 34). With regard to the allegation of sexual harassment, Defendant Smith completed a DC-17X which indicated Plaintiff threatened to file a PREA investigation against him. (Id. at ¶ 35). Furthermore, there was an assisting officer at Plaintiff's door when Defendant Smith was there, and the assisting officer denied Defendant Smith made any harassing statement. (Id.). Plaintiff's claims were conclusively refuted by the evidence, indicating Plaintiff was not being truthful in the allegations and therefore a misconduct was warranted.

Department Policy DC-ADM 801 requires every rule violation be reported via the DC-141 Part 1, Misconduct Report. (Id. at ¶ 37). DC-141 Part 1 is to be written by either the charging staff member who has personal knowledge of the rule violation or written by a staff member at the direction of the person who has personal

knowledge of the misconduct. (Id. at ¶ 38).

SCI-Mahanoy's Security Captain issued misconduct number D362281, completing the DC-141 Part 1, indicating the PREA investigation was determined to be unfounded by BII. (Id. at ¶ 39). Since the Security Captain was not the Lieutenant who completed the PREA investigation, pursuant to policy DC-ADM 801, he noted he was issuing the misconduct since the Lieutenant was on long term leave. (Id.). The Security Captain had personal knowledge of the PREA investigation, as he reviewed the content of the investigative report to verify it contained all the content and qualities identified in the PREA Investigative Standards Checklist and determined the investigative report of Plaintiff's allegations of abuse and sexual harassment met the PREA Investigative Standards Checklist, as DC-ADM 008 required. (Id. at ¶ 40).

DC-ADM 801 requires the DC-141 Part 1 is to be investigated as required, reviewed and approved by the Shift Commander prior to the misconduct being issued to the inmate. (Id. at ¶ 41). On August 20, 2020, Defendant Powell was the Shift Commander, who reviewed the DC-141 Part 1 for misconduct D362281, prior to the misconduct being issued to Plaintiff. (Id. at ¶ 42). Defendant Powell reviewed the misconduct, ensuring the staff member's version on the DC-141 Part 1 supported the charge of the misconduct, there were no errors in the misconduct, and the dates were correct. (Id. at ¶ 43). Defendant Powell found the charged violation was

appropriate and determined it warranted a formal hearing. (Id. at ¶ 44). Defendant

Powell noted on the DC-141 Part 1 that due to the seriousness of the charge, that the

matter was not to be referred for informal resolution, and the misconduct was to

proceed to resolution by the hearing examiner[3]. (Id. at ¶ 45).

Misconduct number D362281 was issued in accordance with Department

Policies DC-ADM 008 and 801, as the PREA allegations were unfounded, and not

made in good faith. Plaintiff would have been issued a misconduct for lying to a

staff, absent the protected act of filing a PREA allegation, since the Department has

a valid penological interest in deterring inmates from filing false allegations. Thus,

Defendant Powell did not retaliate against Plaintiff by issuing misconduct number

D362281.

Plaintiff's misconduct number D362281 was heard before Defendant

Wiederhold, who found him guilty of the misconduct and issued a thirty-day

sanction. (Id. at ¶ 48). Defendant Wiederhold provided a meaningful written

statement, indicating he relied upon the BII Investigation as well as SCI-Mahanoy's

Security Investigation, finding it was more credible than Plaintiff's denial and found

there was a preponderance of evidence to support the charge. (Id. at ¶ 49).

---

[3] DC-ADM 801 states the Shift Commander is to determine an inmate's mental health status and if an inmate is carried on the active Mental Health/Intellectual Disability Roster, and the misconduct is non-violent in nature, the Shift Commander will refer the misconduct for informal resolution, except in cases where the Shift Commander determines the misconduct warrants formal hearing. (Id. at ¶ 46). Defendant Powell determined Plaintiff was on the active Mental Health/Intellectual Disability Roster, and completed the MH/ID Consultation Disciplinary Disposition Form, in accordance with Policy. (Id. at ¶ 47).

Furthermore, the finding of guilt was upheld through the appeal process. (Id. at ¶ 50). Thus, there was a quantum of evidence to support the fact that the misconduct was not issued in retaliation for filing the PREA allegation. *Singleton* at *7.

The Department had a valid penological interest in issuing misconduct number D362281 and there was a quantum of evidence to support the misconduct was not issued in retaliation for filing the PREA allegations. Therefore, summary judgment should be entered in favor of Defendant Powell and Defendant Wiederhold.

Retaliation claims against Defendant Smith:

The Court, in its December 27, 2022 Memorandum, found that there were three distinct adverse acts Plaintiff has alleged against Defendant Smith in support of his claim that he was retaliated against by Defendant Smith: (1) Defendant Smith filed a baseless misconduct charge that was later dismissed; (2) Defendant Smith verbally harassed Plaintiff; and, (3) denied Plaintiff is food tray while Plaintiff was confined to the RHU.  (Doc. 26 at p. 17). All of these allegations are alleged to have occurred during the time period of June 2020, when the PREA allegation was to have occurred, and November 2021, when Plaintiff filed the Complaint. (Id.). The record is devoid of any affirmative evidence that Plaintiff's filing of the PREA allegation motivated Defendant Smith to retaliate against Plaintiff. *Crawford-El v. Britton* 523 U.S. 574, 600 (1998).

When considering a summary judgment motion, alleged facts must only be viewed in the light most favorable to the plaintiff if there is a "genuine" dispute with respect to those facts. *Scott v. Harris*, 550 U.S. 372, 380-81 (2007). Accordingly, "[w]hen opposing parties tell two different stories, one of which is blatantly contradicted by the record, so that no reasonable jury could believe it, a court should not adopt that version of the facts for purposes of ruling on a motion for summary judgment." *Id.* Thus, when the plaintiff's version of the facts is "so utterly discredited by the record," summary judgment should be granted. *Id.*

In *Scott v. Harris*, which concerned a high-speed sheriff's chase of plaintiff Harris and resultant crash and serious injuries to plaintiff, the United States Supreme Court reversed the circuit court's decision upholding the denial of the defendant sheriff's summary judgment motion. It based its decision on a videotape that captured the chase in question. The High Court stated that "[t]he Court of Appeals should not have relied on such visible fiction [as proffered by Harris]; it should have viewed the facts in the light depicted by the videotape." *Id*.

As in *Scott*, no reasonably jury could find Defendant Smith retaliated against Plaintiff. There is documentary evidence and witness statements that all contradict Plaintiff's version of events and leave no genuine dispute as to any material facts.

With regard to the allegation of retaliation by issuing, and then having a misconduct dismissed, a review of Plaintiff's misconducts from June 2020 through

December 2021 show Plaintiff was issued six misconducts, none of which were issued by Defendant Smith. (SMF at ¶ 57). Furthermore, a review of Defendant Smith's issued misconducts show he has only ever issued one misconduct, and it was not issued to Plaintiff. (Id. at ¶ 58). Since Defendant Smith never issued a misconduct, it is apparent Defendant Smith did not retaliate against Plaintiff.

With regard to the allegation of withholding a food tray, Plaintiff never filed a grievance indicating this incident occurred. (Id. at ¶ 55). Furthermore, there is no record that Plaintiff provided a request to staff slip, notifying staff that his food tray was withheld in the RHU. (Id. at ¶ 59). Since there is nothing to support Plaintiff's allegation of Defendant Smith withholding a food tray, this assertion is nothing more than a conclusory statement or a bare bone allegation and it is apparent Defendant Smith did not retaliate against Plaintiff. *Evancho v. Fisher* 423 F.3d 347, 353 (3dCir. 2005); *Ashcroft* 556 U.S. at 677.

A review of Plaintiff's grievances indicates Plaintiff properly grieved (grievance number 878355) an allegation of harassment by Defendant Smith on July 13, 2020. (Statement of Material Facts at ¶ 60). However, there are no facts to support that this alleged harassment was done in retaliation or even occurred.

The record is devoid of any evidence to establish that the protected activity was a substantial motivating factor in the adverse action. *Singleton* 2019 WL 3337060 at * 6; *Watson,* 834 F.3d at 422. "The temporal proximity of a retaliatory

17

act to a plaintiff's exercise of his or her First Amendment rights is probative, but not dispositive of the causation element." *Vernon v. Custer*, 2014 WL 1809386 at *8, (M.D.Pa. May 7, 2014); *Conklin v. Warrington Tp.,* 2009 WL 1227950 at *3 (M.D.Pa. April 30, 2009; *Estate of Smith v. Marasco*, 318 F.3d 497, 512 (3dCir. 2003); *see also, Kachmar v. Sungard Data Sys., Inc.* 109 F.3d 173, 178 (3dCir. 1997)(stating that "temporal proximity merely provides an evidentiary basis from which an inference can be drawn").

However, "courts in civil rights cases have frequently rebuffed speculative efforts to infer causation from temporal proximity when a span of weeks or months separated the plaintiff's constitutionally protected conduct from the defendants' alleged act of retaliation." *Id.* The District Courts in Pennsylvania have held that:

> "a temporal proximity of as little as seventeen days was insufficient to establish causation. *See Killen v. N.W. Human Servs., Inc.,* No. 06–4100, 2007 WL 2684541, at *8 (E.D.Pa. Sept.7, 2007) (holding that temporal proximity of seventeen days was insufficient to establish causation); *see also Farrell,* 206 F.3d at 279 n. 6 (suggesting that temporal proximity of seven weeks would be insufficient to establish causation); *Smith v. ABF Freight Sys., Inc.,* No. 04–2231, 2007 WL 3231969, at *11 (M.D.Pa.Oct.29, 2007) (holding that temporal proximity of one and one-half months was insufficient to establish causation); *Mar v. City of McKeesport,* No. 05–19, 2007 WL 2769718, at *4 (W.D.Pa.Sept.20, 2007) (holding that temporal proximity of three months was insufficient to establish causation)." *Fischer v. Transue,* 04–2756, 2008 WL 3981521, * 10 (M.D.Pa. Aug.22, 2008) (holding that temporal proximity of three weeks was insufficient to establish causation)."

*Id.*

Plaintiff filed grievance number 878355 alleging that on July 11, 2020, Defendant Smith retaliated against him for filing the PREA complaint by verbally harassing him. (SMF at ¶ 60). The alleged sexual abuse and harassment of the PREA complaint is alleged to have occurred on June 3, 2020. (Id. at ¶ 18). On June 3, 2020, Defendant Smith noted on the DC-17X that Plaintiff threatened to file a PREA complaint on him. (Id. at ¶ 35). When a staff member has a PREA allegation filed against him or her, he or she is typically notified when the PREA allegation has been filed. (Id. at ¶ 61). In the instant case, the PREA allegation was filed on June 6, 2020. (Id. at ¶ 18). Defendant Smith would have been aware of the PREA allegations thirty-five days before the alleged harassment on July 11, 2020. Thus, there is no temporal proximity to suggest retaliation[4]. *Vernon*, 2014 WL 1809386 at *8.

Since the temporal proximity is not so close to be unduly suggestive, other evidence must be looked at to determine if there was a pattern of antagonism coupled with timing to suggest a causal link. *Singleton* 2019 WL 3337060 at * 6. Grievance number 878355 was investigated, and it was determined that there was no evidence to support Plaintiff's claim of harassment. (SMF at ¶ 62). The investigation found that Defendant Smith was wearing sunglasses during the alleged harassment

---

[4] Assuming, *arguendo*, that Defendant Smith was not made aware of the PREA allegation until he was interviewed by Lieutenant Biscoe, on June 24, 2023, that would have been seventeen days. *See, Appendix, Exhibit Q, SCI-Mahanoy PREA Investigation 2020-P-770.*

incident, thus Plaintiff would not have been able to see his eyes. (Id. at ¶ 63). Furthermore, Plaintiff's appeals of the denial of grievance number 878355, found there was no evidence to substantiate the claims. (Id. at ¶ 64). Furthermore, there is nothing that would suggest Defendant Smith engaged in a pattern of antagonism against Plaintiff. *Id.*

Since there is nothing to support Plaintiff's allegation that Defendant Smith harassed him, this assertion is nothing more than a conclusory statement or a bare bone allegation and it is apparent Defendant Smith did not retaliate against Plaintiff. *Evancho* 423 F.3d at 353; *Ashcroft* 556 U.S. at 667. There is no casual connection between the exercise of the constitutional right and the alleged adverse action. Thus, summary judgment should be entered for Defendant Smith.

## <u>Conclusion</u>

Based on the foregoing reasons, Department Defendants respectfully request

this Court grant summary judgment to the remaining claims.

Respectfully Submitted,

____/s/ Kim Adams_____
Kimberly Adams
Assistant Counsel
Attorney ID No. 205848
Pennsylvania Department of Corrections
Office of Chief Counsel
1920 Technology Parkway
Mechanicsburg, PA 17050
(717)728-5571
Email: kimbadams@pa.gov

Date: August 2, 2023

**IN THE UNITED STATES DISTRICT COURT**
**FOR THE MIDDLE DISTRICT OF PENNSYLVANIA**

MARK FORD      :
          :
  Plaintiff,     :  Civil Action No: 4:21-cv-1957
          :
  v.       :  Magisterial Judge
          :  William I. Arbuckle
TYLER SMITH, et al.   :
          :
  Defendants.    :  Filed via Electronic Case Filing

<u>**CERTIFICATION**</u>

I hereby certify that the foregoing brief contains less than 5000 words and therefore complies with Local Rule 7.8(b)(2). Relying on the word processing system utilized by undersigned counsel, I certify that the body of the brief contains 4,909 words. The total word count is 5,627.

      ___/s/ Kim Adams_____
      Kimberly Adams
      Assistant Counsel
      Attorney ID No. 205848
      Pennsylvania Department of Corrections
      Office of Chief Counsel
      1920 Technology Parkway
      Mechanicsburg, PA 17050
      (717)728-5571

Date: August 2, 2023

**IN THE UNITED STATES DISTRICT COURT
FOR THE MIDDLE DISTRICT OF PENNSYLVANIA**

MARK FORD                                :
                                         :
    Plaintiff,                           :        Civil Action No: 4:21-cv-1957
                                         :
    v.                                   :        Magisterial Judge
                                         :        William I. Arbuckle
TYLER SMITH, et al.                      :
                                         :
    Defendants.                          :        Filed via Electronic Case Filing

## <u>CERTIFICATE OF SERVICE</u>

I hereby certify that a true and correction copy of the foregoing *BRIEF IN SUPPORT OF DEPARTMENT DEFENDANTS' MOTION FOR SUMMARY JUDGMENT* was forwarded to the following person:

 Smart Communications/PADOC
 Mark Ford, MW7649
 SCI-Mahanoy
 PO Box 33028
 St. Petersburg, FL 33733

                         By: /s/ Kim Adams
                         Kimberly Adams
                         Assistant Counsel
                         Attorney ID No. 205848
                         Pennsylvania Department of Corrections
                         Office of Chief Counsel
                         1920 Technology Parkway
                         Mechanicsburg, PA 17050
                         (717)728-5571

Date: August 2, 2023